Our third case this morning is number 23-2354, Patent Quality Assurance LLC v. VLSI Technology LLC. Okay, Mr. Banner. May it please the court, Brian Banner for PQA. PQA's cross appeal is very narrow. PQA is not asking the court to disturb the underlying written decision. PQA asks only that the court vacate the director's sanctions because both stated bases for those sanctionings of PQA were an abuse of discretion. I'll begin with the discovery issue. The director sanctioned PQA for not fully complying with what she called mandated discovery. But the threshold problem is that no statute or regulation gives the director... Why is there no statute or regulation? I mean, she has the authority to impose sanctions and the cases seem to suggest that requiring information from the parties in order to perform a statutory function is inherently within the authority of the agency. Why isn't that sufficient for her to request this discovery? So, an agency only has the authority that Congress grants it. And in the posture of an IPR, Congress is very explicit about what type of discovery could be had in IPRs and how that... As between the private parties in the case between the petitioner and the patent owner, it wasn't talking about the sanction situation and what authority the director would have under those circumstances to request information, right? I disagree with that. I think what the statute did, and this is 316A5, it says, the director shall prescribe regulations governing discovery of this proceedings. It wasn't specific to discovery between the parties. It didn't limit it to that. It said, prescribe regulations that govern discovery. And that's so that petitioners and parties who were going to this agency would understand what procedures were available and what the patent office did, what the director did when implementing the original regulations in 2012 was set up 42.51 as the discovery regulation. And what the director at that time made the reasoned decision that there should only be certain kinds of discovery. That discovery did not include sua sponte discovery by the director. What it included was routine discovery in 42.51b1 and additional discovery in 42.51b2. Now, neither of those provisions allow for the type of discovery that was had in this case. The patent office tries to rely on those, and especially with the 42.51b1, which is routine discovery. But no one contends that the director's interrogatories in this case directed to PQA's formation, its membership, its funding was routine discovery. That was... It may be routine under the circumstances before it. It may be routine in that sense. I would disagree with that, Your Honor, because 42.51 expressly says the types of discovery that are routine in IPRs. And that's, you know, cross-examination of declarants and exhibits that are cited in papers. That's the routine discovery. So anything outside of that, according to the way the regulations set up, is non-routine. And that would go to 42.51b2. But that subsection requires a motion by a party showing that the discovery is in the interest of justice. And that's evaluated under the board's Garmin precedent. So even if that subsection allowed the director to do what she did, which we... PQA disagrees that it does, the director still did not evaluate this discovery to see whether it was justified under the Garmin factors. And whether that interest of justice standard was met. So finally, the PTO, in its last attempt to justify this discovery, relies on Rule 42.5a, which is a catch-all kind of regulation. But that argument fails, because that section allows the board to manage a proceeding. It does not create a new discovery power that Congress did not grant, and that the PTO never adopted through rulemaking. If Rule 42.5a can authorize a type of sua sponte director discovery that happened in this case, then it swallows the entire congressional requirement in Section 316a5 that IPR discovery must be governed by regulations that establish standards and procedures. So the discovery point, I think, is straightforward. The mandate is... Does the regulation not permit the director to conduct discovery relating to the proper course of conduct in the proceeding? So that specific regulation says that the board may make decisions... So you're right, that's exactly the wording, I think, Your Honor, is to choose the proper course of conduct. But again... Is that broad enough to encompass what's going on here? I think it is not broad enough, because it also caveats that with for situations not already addressed by this chapter. And the problem with that is that discovery is already addressed by this chapter in 42.51. So the director, when implementing these regulations, made a reasoned decision about what type of discovery is allowed, and that's in 42.51. 42.5a says, hey, if there's something that we haven't covered, the board can take appropriate action. But it's already covered. It's already covered because the scope of discovery is set, and parties have settled expectations as to what type of discovery they will encounter when they come into these proceedings. So the basis for the sanction should be reversed, because the director abused that discretion in sanctioning PQA for failing to comply with what is an unlawful order. The second basis, and I know I'm getting into my rebuttal time, but I'll make this quick, is that the statements about Dr. Singh. Though that sanction should also be reversed, because PQA did not misrepresent or mislead anybody regarding its exclusive engagement of Dr. Singh. Importantly, PQA filed that agreement with the board before any actions were taken in either OpenSky or the PQA case. So VLSI had the agreement, OpenSky had it, the board had it. VLSI even quoted the waiver language, which the director faulted PQA for not mentioning in the proceeding with OpenSky. And the OpenSky board, as the director expressly acknowledged at appendix 246 and 247, the OpenSky board, sorry that's appendix 247, the OpenSky board seems to have been aware that PQA could, in theory, release Dr. Singh. So the director's sanction rests on clearly erroneous fact findings here. PQA made two accurate statements about its exclusive agreement with Dr. Singh, and that it could be waived, and there was no actual reliance by the board on any of PQA's statements when it denied OpenSky's petitions. So PQA respectfully asks the court to vacate both bases for the director's sanctions, and I'll reserve the rest of my time for rebuttal. Thank you. Mr. Mehron. May it please the court. So in light of two instances of actionable misconduct, the director imposed sanctions. She imposed the lightest sanction. It was an admonition, an admonishment to PQA. Each of those grounds of sanctionable misconduct is supported by the I mean, the finding with respect to the Singh exclusivity arrangement seems pretty weak. I don't know if that's the case, your honor, because if you look at the statements, we point to an exclusive arrangement, but it was subject to being waived, right? So the patent office had a copy of the agreement. So the first thing I'll say for context is parties who appear before the office are subject to a heightened duty of candor. They can't leave out information that's necessary to render a statement completely true and accurate, but I would direct you to the statements in our briefs, and particularly if you go to Appendix 1009, where PQA says that they've exclusively retained the expert, they go on to say that OpenSky cannot present testimony from that expert. They don't say OpenSky cannot unless they release them, right? It's true, but there's the opportunity for PQA to release them. So saying Well, but the board in another proceeding relied on that representation because PQA came to the office and made a declaratory statement. We have an exclusive relationship with this expert, and OpenSky cannot present a case because they are not the expert here was subject to being waived, and it was not an agreement that says, you know, we have an exclusive arrangement. You can only represent us, period, which would mean that to do otherwise would require amending that agreement or supplementing that agreement, whereas the agreement in place here would just, well, all they need is permission. There's a difference, is there not? There absolutely is a difference, but the issue isn't what the agreement said. The issue is what PQA said. PQA was subject to a duty of candor to the tribunal, and I'll again direct you to Appendix 1009 and Appendix 1176, where they say OpenSky cannot produce Dr. Singh, and your honors are correct. As a literal matter, until OpenSky, until OpenSky received the written waiver from PQA, they could not bring in Dr. Singh. The issue is the statements, which the director read, and she, within her discretion, read them to suggest. They had the agreement, you know, they had the agreement. I don't believe we had the agreement at the time the original statements were made. Well, that may be true, but you had the agreement thereafter, right, and before the decision was rendered. That doesn't excuse PQA's obligation to provide candor to the office, and so for PQA to come in and say that not only have they exclusively retained Dr. Singh, but that OpenSky cannot present evidence from Dr. Singh, that was not fully accurate because OpenSky could with their permission, and so the director reviewed those statements. She reviewed several of them. This is page 60 of our brief, and we list them, and the director found those statements to be misleading. The other ground is the discovery, as I think Your Honors addressed, Rule 5 provides for the conduct of proceedings in situations that are not otherwise covered. This certainly falls into that category, and unless Your Honors have any further questions, we rest on our briefs. Okay. Thank you. Well, it's clear that we disagree with PQA a lot. There is a little bit of a pinball-like quality to what the director did here, maybe because she basically stepped out of the appellate role and into running it, but there's no doubt here that there's severe misconduct, so at most, any remedy here would be to go back to the director, to go reconsider what's the full sanctions available, and to make that decision. If I understand the argument from PQA correctly, it's that it couldn't have been director-driven. Discovery had to be driven by the parties. Well, even if that were true, that simply means we would go back and we could ask for the discovery that the director asked for, and we would have been happy to be so. I'm not at all clear that we would have gotten any answer different from the director is, but I'd be happy to figure out what PQA's business purpose was when they started and get to the bottom of what's going on. In addition, look, I think the director's objection to the description of the exclusivity has to do with the shifting nature of the rationale, which is first, the director says that, you know, you changed your story multiple times. First, you didn't mention that it was waivable. When the director says, hey, efforts to interfere with another proceeding is an abuse. You're not Oh, but it's waivable. And the director says, hey, wait a minute. You should have mentioned it was waivable in the first place, at which point PQA says, well, it didn't matter that we didn't mention it because we wouldn't have waived it. You end up with these circular things. Now, the director could have better articulated that it was the ever-shifting change in the nature of the rationale, but I think that is the essence. And if it isn't the essence of what the rationale was, then the answer, once again, is there was serious misconduct here. This case has to go back. Whether you do it on PQA's grounds or ours, the answer is the director has authority to impose sanctions, severe sanctions, and there was misconduct. We think the director didn't abuse her discretion here, but certainly the director would have an opportunity to fix anything on remand. Thank you. Okay. Mr. Banner. Thank you, Your Honors. I just want to touch briefly on this idea of the duty of candor that PQA had. Now, I don't disagree with that duty of candor, but sanctions based on PQA's characterization of an agreement that was submitted to the board and every party improperly penalizes advocacy. It's not misconduct. Advocates are not required to present facts to the board. Most favorable to their opponents. If a literally accurate statement, as is the case here, that's supported by record evidence becomes sanctionable because it could have been phrased differently, there is no workable balance for advocacy. My friend on the other side said that there was some problem with the shifting story, but that was not what the director based her sanctions on. She mentioned that interplay, but the context matters. At the beginning, when PQA was talking about the exclusivity provision in its petition, it was in the context of, hey, board, you should not deny PQA's petition because OpenSky also has a petition pending, and here's why. Because PQA has exclusively engaged this expert. That was the context. Later, when PQA made additional representations about the waiver, wavability of that provision, it was because the director had alluded to the fact that perhaps even just having an exclusive agreement with an expert could be considered an abusive process. And so PQA was explaining why, hey, yes, we have this, but it can be waived. We've never actually denied anybody the access to Dr. Singh. And so the context of when these statements were made matters. And VLSI and the one final point on the discovery issue. VLSI came up here and my friend said they could have asked for the discovery and maybe got the same result. Well, they had ample opportunity during the proceeding below to ask for that discovery. They never did. Maybe they regret that decision now, but that doesn't change the fact that the director under the current regulations does not have the authority to ask for that discovery. Now, the director can do rulemaking and change that for future, but in this case, there was no authority. And so these sanctions must be reversed. Thank you. Okay. I think all counsel, the case is submitted.